FILED

2018 MAY -4  AM 11: 20

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF
## FLORIDA

SANDRA K. DRESSLER,

    Plaintiff,

Case No. 2:18-CV-311-FtM-99CM

-v-

U.S. DEPARTMENT OF EDUCATION;
BETSY DEVOS, in her official capacity
As Secretary of the U.S. Department of Education;
FLORIDA DEPARTMENT OF EDUCATION;
NAVIENT CORPORATION; NAVIENT
SOLUTIONS, INC.; EDUCATION CREDIT
MANAGEMENT CORPORATION; PIONEER
CREDIT RECOVERY, INC.; EQUIFAX, INC.;
EQUIFAX INFORMATION SERVICES, LLC.;
and Does 1-10,

    Defendants.

## VERIFIED COMPLAINT

### I. INTRODUCTION

1.  This is an action brought pursuant to the Fair Credit Reporting Act 15 U.S.C.

    §1681 ("FCRA"), which prohibits reporters from engaging in deceptive and unfair

practices. Defendants are "furnisher of information" under the FCRA. Defendants reported derogatory remarks to the Credit Reporting Agencies (hereinafter "CRA"). The FCRA also requires CRAs to report accurate information.

2. This is an action brought pursuant to the Fair Debt Collection Practices Act 15 U.S.C. §1692, et seq. ("FDCPA"), which prohibits collectors from engaging in deceptive and unfair practices. Plaintiff seeks damages and other relief.

3. This is an action brought pursuant to the Telephone Consumer Protection Act 47 U.S.C. §227, et seq. ("TCPA"), which prohibits collectors from engaging in automatic telephone calling. Plaintiff seeks damages and other relief.

4. This is also an action brought pursuant to breach of common law right to contract, and *ultra vires*. Even when not specified, though, the U.S. Uniform Commercial Code provides the opportunity to terminate a contract due to a fundamental breach—a failure to fulfill the terms of the contract so significant that it undermines the entire contract. A contract is based on the idea that parties must fulfill their agreed-upon duties in good faith, whether delivering goods, sending payment, or doing whatever is written in the contract. If that does not happen, the contract is no use and can be terminated.

5. As an additional breach of contract, this action is brought against EQUIFAX for its failures to protect and secure Plaintiff's personal identifying information ("PII"), including full name, social security number, date of birth, address and some driver's license numbers of Plaintiff and some 143 million similarly situated consumers in the United States.

## II.    JURISDICTION

1. Jurisdiction arises under 15 U.S.C. §1681 et seq., 15 U.S.C. §1692k, 47 U.S.C. §227, 28 U.S.C. §1331, and 28 U.S.C. §1337(a). Violations have occurred within one (1) year from the filing of this case.

2. Personal jurisdiction exists over Defendants as they had the necessary minimum contacts in this State and this suit arises out of their specific conduct with Plaintiff.

3. No jurisdiction herein shall annul, alter, or affect, or exempt any person from complying with State law. See 15 U.S.C. §1692n.

## III. VENUE

4. Venue is established as Defendants do business in this district, reside in this district and have the capacity to be sued in its common name. See 28 U.S.C. §1391(c)(2).

## IV.    PARTIES

5. Plaintiff Sandra K. Dressler (hereinafter "Plaintiff") is a consumer whose address is 3823 SE 11th Place, Unit 1, Cape Coral, Florida 33904.

6. Defendant U.S. DEPARTMENT OF EDUCATION (hereinafter "DOE") is an agency of the United States. Defendant DOE is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. As such, it is subject to the FCRA. The Department is located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

7. Defendant Betsy DeVos (hereinafter "DEVOS") is the Secretary of Education. She is sued in her official capacity. The Secretary's official address is 400 Maryland

Avenue, SW, Washington, D.C. 20202.

8. Defendant FLORIDA DEPARTMENT OF EDUCATION (hereinafter "FDE") is an agency of the state of Florida. Defendant FDE is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. As such, it is subject to the FCRA. The Department is located at 325 W. Gaines St, Tallahassee, FL 32399.

9. Defendant NAVIENT CORPORATION (hereinafter "NC") is a loan management, servicing, and asset recovery company and is a Delaware corporation. Defendant NC is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. NC is located at P.O. Box 9635 Wilkes-Barre, PA 18773. NC is the direct or indirect owner of all of the stock of NAVIENT SOLUTIONS, INC. (hereinafter "NSI", formerly known as SALLIE MAE, INC.). NSI is located at 220 Lasley Ave, Wilkes-Barre, PA 18706. At all times material to this complaint, NC has been located and transacted business in this district, whether directly or through its subsidiaries. Defendant NC is a "debt collector" as that term is contemplated in the FDCPA, 15 U.S.C. §1692a(6).

There has been significant overlap between the corporate governance and management of NC and NSI. Specifically, many of the directors and officers of NSI have also been directors or officers of NC. For example, as of 2014, John Remondi served as President and Chief Executive Officer for both NC and NSI; John Kane served as Chief Operating Officer for both NC and NSI; Somsak Chivavibul served

as Chief Financial Officer for both NC and NSI; Timothy Haynes served as Chief Risk

Officer for both NC and NSI; and Stephen O'Connell served as Senior Vice President

and Treasurer for both NC and NSI. As a result of the 2014 corporate reorganization,

NC is currently the entity that contracts with the DOE for the servicing of federal

student loans.

10.    Defendant EDUCATION CREDIT MANAGEMENT CORPORATION (hereinafter

"ECMC") is a non-profit organization that offers education loan guarantee services. It

provides loan bankruptcy management, loan collection, and document management

services. ECMC has its regular place of business located at 1 Imation Place, Building 2,

Oakdale, MN 55128. ECMC is currently the entity that contracts with FDE for the

servicing of student loans. Defendant ECMC is an entity who, regularly and in the

course of business, furnishes information to one or more consumer reporting agencies

about its transactions or experiences with any consumer and therefore constitutes a

"furnisher," as codified at 15 U.S.C. §1681s-2. As such, it is subject to the FCRA.

Defendant ECMC is a "debt collector" as that term is contemplated in the FDCPA, 15

U.S.C. §1692a(6).

11.    Defendant PIONEER CREDIT RECOVERY, INC. (hereinafter "PIONEER") is, and

at all times mentioned herein was, a corporation incorporated under the laws of the

State of Delaware, whose address is 26 Edward Street, Arcade, NY 14009. Defendant

PIONEER is owned by Defendant NC (Navient Corporation), a financial corporation

that specializes in servicing student loans issued by the federal government and is a

Defendant herein. Defendant PIONEER is a private collection agency under contract

with the IRS to collect outstanding tax debts. Defendant PIONEER is a "debt collector"

as that term is contemplated in the FDCPA, 15 U.S.C. §1692a(6).

12.    Defendant EQUIFAX, INC (hereinafter "EQUIFAX"), is a Delaware foreign corporation believed to be authorized to do, and doing business in the State of California. Defendant EQUIFAX is a "consumer reporting agency," as codified at 15 U.S.C. §1681a(e). Defendant EQUIFAX principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. EQUIFAX LLC may be served through its registered agent, Corporation Services Company, 211 E. 7th St., Suite 620, Austin, TX 78701. EQUIFAX is a public corporation, trading in the New York Stock Exchange as "EFX". EQUIFAX is the parent corporation of EQUIFAX LLC.

13.    Defendant EQUIFAX INFORMATION SERVICES, LLC (hereinafter "EQUIFAX LLC") is a foreign corporation/limited liability company believed to be authorized to do, and doing business in the State of California. Defendant EQUIFAX LLC is a "consumer reporting agency," as codified at 15 U.S.C. §1681a(e).  Defendant EQUIFAX LLC principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. EQUIFAX LLC may be served through its registered agent, Corporation Services Company, 211 E. 7th St., Suite 620, Austin, TX 78701. EQUIFAX LLC is a provider of consumer credit reports and credit monitoring programs; business of "assembling or evaluating consumer credit information." 15 U.S.C. § 1681a(f).

14.    Defendants Does 1-10 are currently unknown to plaintiff. Complaint will be amended when facts are discovered regarding unknown parties.

## V.    STATEMENT OF CLAIM

15. On or about July 1, 2017, Plaintiff sent Defendant DOE/NC a Notice of Dispute, demanding validation of an alleged account with Defendant DOE.

16. On or about July 1, 2017, Plaintiff sent Defendant FDE a Notice of Dispute, demanding validation of an alleged account with Defendant DOE.

17. On or about July 1, 2017, Plaintiff send Defendant ECMC a Notice of Dispute demanding validation of an alleged account with Defendant DOE.

18. On or about August 28, 2017, Plaintiff send Defendant NC a Notice of Dispute, demanding validation of an alleged account with Defendant DOE.

19. On or about August 28, 2017, Plaintiff send Defendants Experian, Equifax and TransUnion a Notice of Dispute demanding validation of an alleged account with Defendant DOE.

20. On or about August 28, 2017, Plaintiff send Defendant ECMC a Notice of Dispute demanding validation of an alleged account with Defendant FDE.

21. On or about February 17, 2018, Defendant PIONEER send Plaintiff a "Tax Delinquent Notice" stating that Plaintiff owed a debt to the IRS.

22. On or about February 28, 2018, Plaintiff send Defendant PIONEER a Notice of Dispute demanding validation of an alleged debt with the IRS.

23. On or about March 13, 2018, Defendant PIONEER send Plaintiff a response stating that Plaintiff could validate the alleged debt by access to the Internet.

24. Defendants DOE, NC, FDE, and ECMC reported inaccurate derogatory information about Plaintiff to one or more consumer reporting agencies.

25. Defendants NC, FDE and ECMC made unauthorized calls to Plaintiff's cellular

telephone.

## VI. ALLEGATIONS

26. Plaintiff brings this action on her own behalf.

27. The Defendants are reporting derogatory and inaccurate information about Plaintiff
    to one or more consumer/credit reporting agencies (credit bureaus) as defined by
    15 U.S.C. § 1681a.

28. Plaintiff has disputed the accuracy of the derogatory and inaccurate information
    reported by the Defendants to the Credit Reporting Agencies via certified mail.

29. Defendants have not properly responded to Plaintiff's letters of dispute by providing
    evidence of the alleged debt to Plaintiff nor to the Credit Reporting Agencies.

30. Defendants have not provided notice of this disputed matter to the Credit Reporting
    Agencies and is therefore in violation of 15 U.S.C. § 1681s-2 which requires such
    notice.

31. Defendants DOE and Devos have not disclosed that it did not loan any of its money
    to Plaintiff.

32. In servicing the alleged accounts, Defendants NC, FDE and ECMC failed to report
    accurate information to the Credit Reporting Agencies.

33. Plaintiff executed, and delivered, Promissory Notes to Defendants DOE and FDE.
    The value of said Promissory Notes are what Defendants DOE and FDE used to
    fund the loans. Defendants DOE and FDE did not use their own funds. Plaintiff is
    the creditor, as she is the only one who put up anything of value.

34. From at least August 10, 2017 through at least September 12, 2017, Defendants

violated the TCPA by calling and leaving approximately 25 recorded messages

using automatic telephone dialing system or artificial or prerecorded voices on

Plaintiff's cellular phone.

35. From at least August 10, 2017 through at least September 12, 2017, Defendants

violated the TCPA by calling Plaintiff's cellular phone at least 25 times with no prior

permission given by Plaintiff.

36. Defendant PIONEER failed to disclose that they were owned by Defendant

NAVIENT; acting to collect on the same alleged debt.

37. Defendant EQUIFAX failed to protect sensitive information in its records regarding

Plaintiff.

## VII.   CAUSE OF ACTION

### COUNT 1
### VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C.§1681
### BY DEFENDANTS DOE, DEVOS, NC, FDE and ECMC

38. All above paragraphs are incorporated herein.

39. Section 623(a) of the FCRA describes the duties of furnishers to provide accurate

information to CRAs. Section 623(a)(1)(B) prohibits furnishers from providing

information relating to a consumer to any CRA if (i) the person has been notified by

the consumer, at the address specified by the person for such notices, that specific

information is inaccurate; and (ii) the information is, in fact, inaccurate.

40. Section 623(b)(1) of the FCRA requires furnishers of information to CRAs to

conduct an investigation when the furnisher receives a notice of dispute from a CRA in

accordance with the provisions of Section 611(a)(2) of the FCRA, 15 U.S.C.

§1681i(a)(2), and to report the results of the investigation to the CRA. Plaintiff has received no evidence that the furnisher (Defendants in this Count) has complied with this requirement.

41. On or about February 2017, Defendants (Defendants in this Count) began reported inaccurate derogatory information to one or more CRAs (credit bureaus) as defined by 15 U.S.C. §1681a.

42. Plaintiff, on many occasions, sent written requests to Defendants (Defendants in this Count), under the Fair Credit Reporting Act, disputing the information and demanding that these Defendants investigate the accuracy of the derogatory information that it reported.

43. Defendants (Defendants in this Count) are required, under the Fair Credit Reporting Act, to conduct the investigation and notify the consumer of the results within 30 days of the request. See 15 U.S.C. §1681s-2.

44. Defendants (Defendants in this Count) have not notified Plaintiff of any determination that Plaintiff's dispute is frivolous within the 5 days required by 15 U.S.C. §1681s-2, nor at any other time. Defendants (Defendants in this Count) have continued to report inaccurate information to the CRAs even after receiving such notice from Plaintiff.

45. Defendants (Defendants in this Count) have not reported said disputes to the reporting agencies.

46. Consumers can maintain a private action against furnishers of information under

Section 1681s-2(b). See *Domhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918 (N.D. Ill.

2000); *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d 1296 (D.N.M.

2000); *Campbell v. Baldwin*, 90 F. Supp. 2d 754 (E.D.Tex.2000).

## COUNT 2
## VIOLATION OF FAIR CREDIT REPORTING ACT 15
## U.S.C.§1681s-2(b) BY DEFENDANTS DOE, DEVOS, NC,
## FDE and ECMC

47. All above paragraphs are incorporated herein.

48. Defendants (Defendants in this Count) are required to conduct a meaningful

investigation of an alleged debt when requested to do so by a consumer.

49. Defendants (Defendants in this Count), by not conducting a meaningful

investigation, or an investigation at all, constitute violations of Section 623(b) of the

FCRA, 15 U.S.C. §1681s-2(b).

50. Consumers can maintain a private action against furnishers of information

under Section 1681s-2(b). See *Domhecker v. Ameritech Corp.*, 99 F. Supp. 2d

918 (N.D. Ill. 2000); *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d

1296 (D.N.M. 2000); *Campbell v. Baldwin*, 90 F. Supp. 2d 754 (E.D.Tex.2000).

## COUNT 3
## VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT (FDCPA), 15 U.S.C. §1692e(8)
## BY DEFENDANTS DOE, DEVOS, FDE, ECMC,
## and NC

51. All above paragraphs are incorporated herein.

52. In connection with the collection of a debt, Defendants (Defendants in this

Count), directly or indirectly, used false, deceptive, or misleading representations

or means, in violation of Section 807 of the FDCPA, 15 U.S.C. §1692e, including

failure to communicate to the CRA to which it reported a debt that the debt is

disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. §1692e(8).

## COUNT 4
## VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT (FDCPA), 15 U.S.C. §1692, et seq.
## BY DEFENDANT NC

53. All above paragraphs are incorporated herein.

54. Plaintiff is an unsophisticated consumer.

55. Defendant (Defendant in this Count) are debt collectors and have violated the

FDCPA.

56. Defendant (Defendant in this Count) engaged in unfair practices and a wrongful

campaign to collect alleged indebtedness from Plaintiff, which Defendant

(Defendant in this Count) knew or actively avoided knowing was not due from

Plaintiff and ignored Plaintiff's disputes as to the collection account and Defendant

(Defendant in this Count) further reported false credit reporting and

communications to the CRAs and attributed said information to Plaintiff in violation

of the FDCPA, 15 U.S.C. §1692f.

57. Defendant (Defendant in this Count) have engaged in a pattern of conduct

designed to harass and abuse Plaintiff in violation of the FDCPA, 15 U.S.C.

§1692d.

58. The FDCPA is a strict liability statute.

59. Alternatively, Defendant (Defendant in this Count) willfully, or alternatively,

violated the FDCPA.

## COUNT 5
## VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES
## ACT 15 U.S.C.§1692

60. All above paragraphs are incorporated herein.

61. Defendant PIONEER, by mailing or causing to be mailed collection letters to Plaintiff, have violated 15 U.S.C. §1692e by using false, deceptive or misleading representations and means in connection with the collection of consumer debt as set forth above.

62. Defendant PIONEER, by mailing or causing to be mailed collection letters to plaintiff, had violated 15 USC. §1692g(b) by not properly, timely and legally validating the alleged debt in question.

63. Defendant PIONEER continued collection activity <u>after</u> receiving Plaintiff's *2-28-2018* notice of dispute and failed to provide written validation of debt before resuming collection activities, in violation of 15 U.S.C.§1692g(b), as evidenced by Defendant PIONEER's February 17, 2018 and March 13, 2018 letters.


## COUNT 6
## VIOLATION OF TELEPHONE CONSUMER PROTECTION
## ACT (TCPA), SECTION 227, 47 U.S.C. §227(b)(1)(A),
## BY DEFENDANTS NC, FDE and ECMC

64. All above paragraphs are incorporated herein.

65. Defendants (Defendants in this Count) have demonstrated willful or knowing non-compliance with the TCPA by using an automatic telephone dialing system to call Plaintiff's number, which is assigned to a cellular telephone service.

66. Defendants (Defendants in this Count) have committed more than 25 separate violations of the TCPA and Plaintiff is entitled to treble damages of $1,500 per

violation pursuant to 47 U.S.C. §227(b)(3)(B).

67. Defendants (Defendants in this Count) have demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A). The calls are subject to treble damages pursuant to 47 U.S.C. §227(b)(3) as they were intentional. Defendants (Defendants in this Count) were told to cease calling Plaintiff. Defendants (Defendants in this Count) refuses and continues to violate 47 U.S.C. §227. An unintentional call carries a damage amount of $500; an intentional call carries treble damages in the amount of $1,500 per violation.

68. The Plaintiff has never given Defendants (Defendants in this Count) permission to call Plaintiff on her cellular telephone, and the calls were not emergency in nature.

69. Plaintiff and Defendants (Defendants in this Count) do not have an established business relationship within the meaning of 47 U.S.C. §227.

## COUNT 7
## BREACH OF CONTRACT-FRAUD
## BY DEFENDANTS DOE, DEVOS and FDE

70. All above paragraphs are incorporated herein.

71. In making a valid claim for collection of a debt, a creditor must have invested its own money in order to have standing. Money must have changed hands from the creditor to the debtor.

72. In the instant case, the Defendants (Defendants in this Count) did not provide any of its own money to Plaintiff.

73. Defendants (Defendants in this Count) have breached the alleged contract by

not disclosing the fact that it will/did not use its own money, committing *ultra vires*. This act constitutes fraud. Fraud vitiates the most solemn contract.

## COUNT 8
## BREACH OF CONTRACT-NEGLIGENCE
## BY DEFENDANT EQUIFAX

74. All above paragraphs are incorporated herein.

75. On September 7, 2017, Defendant (Defendant in this Count) publicly acknowledged a cybersecurity incident ("Data Breach") that has potentially impacted approximately half of all U.S. consumers who have credit histories. Defendant (Defendant in this Count) admitted that it discovered this data breach on July 29, 2017, and that the unauthorized access to its files, including Plaintiffs' PII, started in mid-May 2017.

76. Rather than timely disclose its data breach, Defendant (Defendant in this Count) waited almost six (6) weeks to publicly disclose the occurrence. In the interim, three EQUIFAX executives sold some $1.8 million of EQUIFAX stock. These executives include Chief Financial Officer John Gamble, who sold approximately $946,000 worth of EQUIFAX stock on August 1, 2017; President of United States Information Solutions Joseph Loughran, who sold approximately $584,000 of EQUIFAX stock, also on August 1, 2017; and President of Workforce Solutions Rodolfo Ploder, who sold approximately $250,000 of EQUIFAX stock on August 2, 2017.

77. Upon accepting and storing PII of Plaintiff in its computer systems and on its networks, Defendant undertook and owed a duty to Plaintiff to exercise reasonable

care to secure and safeguard that information and to use commercially reasonable methods to do so. Defendant (Defendant in this Count) knew that the PII was private and confidential and should be protected as private and confidential.

78. Defendant (Defendant in this Count) owed a duty of care not to subject Plaintiff, along with his PII, to an unreasonable risk of harm because he was a foreseeable and probable victim of an inadequate security practices.

79. Defendant (Defendant in this Count) owed numerous duties to Plaintiff, including the following:

    a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

    b. To protect PII using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

    c. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

80. Defendant (Defendant in this Count) also breached its duty to Plaintiff to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured PII. Furthering their dilatory practices, Defendant (Defendant in this Count) failed to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather PII of Plaintiffs', misuse the PII and intentionally disclose it to others without consent.

81. Defendant (Defendant in this Count) knew, or should have known, of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems, and the importance of adequate security. Defendant (Defendant in this Count) knew about the previous data breaches at EQUIFAX.

82. Defendant (Defendant in this Count) knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiff's PII.

83. Defendant (Defendant in this Count) breached its duties to Plaintiff by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII of Plaintiffs'.

84. Because Defendant (Defendant in this Count) knew that a breach of its systems would damage millions of individuals, including Plaintiff, Defendant (Defendant in this Count) had a duty to adequately protect their data systems and the PII contained therein.

85. Defendant (Defendant in this Count) has a special relationship with Plaintiff. Plaintiffs' willingness to entrust Defendant with his PII was predicated on the understanding that Defendant (Defendant in this Count) would take adequate security precautions. Moreover, only Defendant (Defendant in this Count) had the ability to protect its systems and the PII it stored on them from attack.

86. Defendant (Defendant in this Count) also had independent duties under state and federal laws that required Defendant (Defendant in this Count) to reasonably safeguard Plaintiffs' PII and promptly notify him about the data breach.

87. As a result of the EQUIFAX Data Breach, Plaintiffs' PII has been exposed to criminals for misuse. The injuries suffered by Plaintiff, or likely to be suffered by

Plaintiff as a direct and proximate cause and result of the EQUIFAX Data Breach include:

    a. unauthorized use of his PII;

    b. theft of his personal and financial information;

    c. costs associated with the detection and prevention of identity theft and unauthorized use of his financial accounts;

    d. damages arising from the inability to use his PII;

    e. loss of use of and access to his account funds and costs associated with inability to obtain money from his account or being limited in the amount of money he was permitted to obtain from his account, including missed payments on bills and loans, late charges and fees, and adverse effects on his credit including decreased credit scores and adverse credit notations;

    f. costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

    g. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by his PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' information on the Internet black market;

h.  damages to and diminution in value of his PII entrusted to Defendant for the sole purpose of purchasing products and services from Defendant; and

i.  the loss of Plaintiffs' privacy.

88. Defendants' (Defendant in this Count) negligence may have contributed to the false accounts that Defendants claim to belong to Plaintiff.

89. Through Defendant's (Defendant in this Count) acts and omissions described in this Complaint, including Defendant's (Defendant in this Count) failure to provide adequate security and its failure to protect PII of Plaintiffs' from being foreseeably captured, accessed, disseminated, stolen and misused, Defendant (Defendant in this Count) unlawfully breached its duty to use reasonable care to adequately protect and secure PII of Plaintiffs' during the time it was within Defendant's (Defendant in this Count) possession or control.

90. The law further imposes an affirmative duty on Defendant (Defendant in this Count) to timely disclose the unauthorized access and theft of the PII to Plaintiff so that Plaintiff can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of his PII.

91. Defendant (Defendant in this Count) breached its duty to notify Plaintiff of the unauthorized access by waiting many months after learning of the Data Breach to notify Plaintiff and then by failing to provide Plaintiff information regarding the Data Breach until September 2017. To date, Defendant (Defendant in this Count) has not provided sufficient information to Plaintiff regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff.

92. Plaintiff brings this action to remedy these harms on behalf of herself, whose

PII was accessed during Defendant's data breach. Plaintiff seeks the following remedies, among others: statutory damages under the FCRA, FDCPA and state law causes of action, reimbursement of out-of-pocket losses, other compensatory damages, further and more robust credit monitoring services with accompanying identity theft insurance, and injunctive relief including an order requiring Defendant (Defendant in this Count) to implement improved data security measures.

93. Plaintiff did not contribute to the Data Breach and subsequent misuse of his PII as described in this complaint.

## COUNT 9
## NEGLIGENCE
## BY ALL DEFENDANTS

94. All above paragraphs are incorporated herein.

95. Defendants owed duties of reasonable care to Plaintiff.

96. Defendants failed to exercise reasonable care and prudence in the reporting and collection of the disputed account, each subsequent reporting and re-reporting, the handling and reinvestigation of data about Plaintiff, and attempted collection of the subject accounts, all made the subject of this lawsuit, and which consequently caused damages to Plaintiff.

## COUNT 10
## DEFAMATION
## BY ALL DEFENDANTS

97. All above paragraphs are incorporated herein.

98. Defendants recklessly, maliciously and/or intentionally, published and disseminated false and inaccurate information concerning Plaintiff with reckless

disregard for the truth of the matters asserted.

99. Defendants' publishing of such false and inaccurate information has severely damaged the personal and consumer reputation of Plaintiff and caused severe humiliation, emotional distress and mental anguish to Plaintiff.

100.  Defendants were notified of inaccuracies by Plaintiff, however, the Defendants continued to issue and/or publish report(s) to third parties which contained inaccurate information about Plaintiff.

101.  Defendants have, with willful intent to injure and/or maliciously, defamed Plaintiff.

## VIII.   RELIEF SOUGHT
### A. INJUNCTION FOR VIOLATIONS OF THE TCPA, FDCPA and FCRA

102.  This Court is authorized to issue a permanent injunction to ensure that:

(a) Defendants, all of them, will not continue to violate, the TCPA, FCRA, and the FDCPA and (b) Defendants DOE, NC, ECMC and PIONEER will not continue to violate the FDCPA.

### B.   EQUITABLE RELIEF FOR VIOLATIONS OF THE FCRA, CIVIL PENALTIES FOR VIOLATIONS OF THE FCRA

103.  Section 621 of the FCRA, 15 U.S.C. §1681s, authorizes this Court to award monetary civil penalties of not more than $2,500 per violation, per month, for each violation of Sections 623(a)(3) and 623(b) of the FCRA.

104.  Each instance in which Defendants have violated Sections 632(a)(3) an 623(b) of the FCRA constitutes a separate violation of the FCRA for which Plaintiff seeks

monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. §1681s.

105.   Defendants have engaged in knowing violations of the FCRA as described above, which constitute a pattern or practice of violations.

## C.   CIVIL PENALTIES FOR VIOLATIONS OF THE FDCPA

106.   Defendants DOE, NC, ECMC and PIONEER have violated the FDCPA as described above, with knowledge or knowledge fairly implied on the basis of objective circumstances.

107.   Each instance within five (5) years preceding the filing of this Complaint, in which Defendants have failed to comply with the FDCPA in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

108.   Section 814(a) of the FDCPA, 15 U.S.C. §1692l, and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. §2461, as amended, authorize this Court to award monetary civil penalties of not more than $1,000 for each violation of the FDCPA.

## D.   CIVIL PENALTIES FOR VIOLATIONS OF THE TCPA

109.   Defendants NC, ECMC and FDE have violated the TCPA as described above, with knowledge or knowledge fairly implied on the basis of objective circumstances.

110.   Plaintiff is entitled to damages of $1,500 per violation pursuant to 47 U.S.C. §227(b)(3)(B). Total of 25 violations in the amount of $37,500.

## VIII. PRAYER FOR DAMAGES

**WHEREFORE,** plaintiff prays that this Court enter a judgment for plaintiff,

against Defendants by:

(a) Enter a permanent injunction to prevent future violations of the TCPA, FDCPA

and FCRA by Defendants;

(b) Adjudging that Defendants violated TCPA, FDCPA and FCRA;

(c) Award such relief as the Court finds necessary to redress injury to Plaintiff

resulting from Defendants' violations of the TCPA, FDCPA and FCRA, including but

not limited to, rescission or reformation of contracts, restitution, the refund of monies

paid, and the disgorgement of ill-gotten gains;

(d) Award Plaintiff monetary civil penalties for each violation of the TCPA, FDCPA

and FCRA as alleged in this Complaint, except as to violations of Section

623(a)(1), 15 U.S.C. §1681s-2(a)(1);

(e) Award Plaintiff the costs of bringing this action, as well as other and additional

relief as the Court may determine to be just and proper.

(f) Issue Order directing Defendants to remove derogatory and inaccurate information

from Plaintiff's credit reports.

## IX. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable. Respectfully submitted

this ____2____ day of ___May___ , 2018.

*Sandra K. Dussler*

Sandra K. Dressler, Plaintiff, In Pro Per
3823 SE 11th PLACE, UNIT 1
Cape Coral, FL
33904                    VERIFIED COMPLAINT  Page 23 of 24

LINDSAY STONE
MY COMMISSION # FF 969006
EXPIRES: March 8, 2020
Bonded Thru Notary Public Underwriters

*Lindsay Stone*

## **VERIFICATION**

STATE OF FLORIDA
COUNTY OF LEE

I have read the foregoing Complaint, and knows its contents.

I am the Plaintiff, a party to this action, and am authorized to make this verification. The matters stated in the foregoing document are true and of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.

Sandra K. Dressler, Plaintiff, In Pro Per

LINDSAY STONE
MY COMMISSION # FF 969006
EXPIRES: March 8, 2020
Bonded Thru Notary Public Underwriters

Lindsay Stone