FILED

2019 JAN 16  PM 12: 50

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF
## FLORIDA

SANDRA K. DRESSLER,

     Plaintiff,                     Case No. 2:18-cv-311-FtM-99CM

-v-

U.S. DEPARTMENT OF EDUCATION;
BETSY DEVOS, in her official capacity
As Secretary of the U.S. Department of Education;
FLORIDA DEPARTMENT OF EDUCATION;
NAVIENT CORPORATION; NAVIENT
SOLUTIONS, LLC.; EDUCATION CREDIT
MANAGEMENT CORPORATION; PIONEER
CREDIT RECOVERY, INC.; EQUIFAX, INC.;
EQUIFAX INFORMATION SERVICES, LLC.;
and Does 1-10,

     Defendants.

## THRID AMENDED COMPLAINT

## I. INTRODUCTION

1. Pursuant to this Court's Order dated January 8, 2019, Plaintiff files her final Third
   Amended Complaint.

2. This is an action brought pursuant to the Fair Credit Reporting Act 15 U.S.C. §1681 ("FCRA"), which prohibits reporters from engaging in deceptive and unfair practices. Defendants are "furnisher of information" under the FCRA. Defendants reported derogatory remarks to the Credit Reporting Agencies (hereinafter "CRA"). The FCRA also requires CRAs to report accurate information. Plaintiff seeks damages and other relief.

3. This is an action brought pursuant to the Fair Debt Collection Practices Act 15 U.S.C. §1692, et seq. ("FDCPA"), which prohibits collectors from engaging in deceptive and unfair practices.

4. This is an action brought pursuant to the Telephone Consumer Protection Act 47 U.S.C. §227, et seq. ("TCPA"), which prohibits collectors from engaging in automatic telephone calling; and 15 U.S.C. §1692c.

5. As an additional breach of contract, this action is brought against EQUIFAX for its failures to protect and secure Plaintiff's personal identifying information ("PII"), including full name, social security number, date of birth, address and some driver's license numbers of Plaintiff and some 143 million similarly situated consumers in the United States.

## II.    JURISDICTION

1. Jurisdiction arises under 15 U.S.C. §1681 et seq., 15 U.S.C. §1692k, 47 U.S.C. §227, 28 U.S.C. §1331, and 28 U.S.C. §1337(a). This Complaint was timely filed.

2. Personal jurisdiction exists over Defendants as they had the necessary minimum contacts in this State and this suit arises out of their specific conduct with Plaintiff.

3. No jurisdiction herein shall annul, alter, or affect, or exempt any person from complying with State law. See 15 U.S.C. §1692n.

4. 15 U.S.C. §1681n and §1681o, create a private right of action for consumers to bring against violators of <u>any</u> provision of the FCRA with regard to their credit. *DiMezza v. First USA Bank, Inc.*, 103 F.Supp.2d 1296, 1300 (D.N.M. 2000)

### III. VENUE

Venue is established as Defendants do business in this district, reside in this district and have the capacity to be sued in its common name. See 28 U.S.C. §1391(c)(2).

### IV.    PARTIES

1. Plaintiff Sandra K. Dressler (hereinafter "Plaintiff") is a natural person and an unsophisticated consumer whose address is 3823 SE 11th Place, Unit 1, Cape Coral, Florida 33904.

2. Defendant U.S. DEPARTMENT OF EDUCATION (hereinafter "DOE") is an agency of the United States. Defendant DOE is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. As such, it is subject to the FCRA. The Department is located at 400 Maryland Avenue, SW, Washington, D.C. 20202.

3. Defendant Betsy DeVos (hereinafter "DEVOS") is the Secretary of Education. She is sued in her official capacity. The Secretary's official address is 400

Maryland Avenue, SW, Washington, D.C. 20202.

4.    Defendant FLORIDA DEPARTMENT OF EDUCATION (hereinafter "FDE") is an agency of the state of Florida. Defendant FDE is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. As such, it is subject to the FCRA. The Department is located at 325 W. Gaines St, Tallahassee, FL 32399.

5.    Defendant NAVIENT CORPORATION (hereinafter "NC") is a loan management, servicing, and asset recovery company and is a Delaware corporation. Defendant NC is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. NC is located at P.O. Box 9635 Wilkes-Barre, PA 18773. At all times material to this complaint, NC has been located and transacted business in this district, whether directly or through its subsidiaries. Defendant NC is a "debt collector" as that term is contemplated in the FDCPA, 15 U.S.C. §1692a(6).

6.    NAVIENT SOLUTIONS, LLC (hereinafter "NSL", formerly known as SALLIE MAE, INC. and then NAVIENT SOLUTIONS, INC.) NC is the direct or indirect owner of all of the stock of NSL. NSL is located at 220 Lasley Ave, Wilkes-Barre, PA 18706. Defendant NSL is a "debt collector" as that term is contemplated in the FDCPA, 15 U.S.C. §1692a(6). NC and NSL will be referred

to herein as "NC" collectively.

7.   Defendant EDUCATION CREDIT MANAGEMENT CORPORATION (hereinafter "ECMC") is a non-profit organization that offers education loan guarantee services. It provides loan bankruptcy management, loan collection, and document management services. ECMC has its regular place of business located at 1 Imation Place, Building 2, Oakdale, MN 55128. ECMC is currently the entity that contracts with FDE for the servicing of student loans. Defendant ECMC is an entity who, regularly and in the course of business, furnishes information to one or more consumer reporting agencies about its transactions or experiences with any consumer and therefore constitutes a "furnisher," as codified at 15 U.S.C. §1681s-2. As such, it is subject to the FCRA. Defendant ECMC is a "debt collector" as that term is contemplated in the FDCPA, 15 U.S.C. §1692a(6).

8.   Defendant PIONEER CREDIT RECOVERY, INC. (hereinafter "PIONEER") is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of Delaware, whose address is 26 Edward Street, Arcade, NY 14009. Defendant PIONEER is owned by Defendant NC (Navient Corporation), a financial corporation that specializes in servicing student loans issued by the federal government and is a Defendant herein. Defendant PIONEER is a private collection agency under contract with the IRS to collect outstanding tax debts. Defendant PIONEER is a "debt collector" as that term is contemplated in the FDCPA, 15 U.S.C. §1692a(6).

9.   Defendant EQUIFAX, INC (hereinafter "EQUIFAX"), is a Delaware foreign corporation believed to be authorized to do and is doing business in the State of

California. Defendant EQUIFAX is a "consumer reporting agency," as codified at 15 U.S.C. §1681a(f). See *Hinkle v. Experian Information Solutions, Inc.*, 1:18-cv-007, USDC, W.D.N.C. Defendant EQUIFAX principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. EQUIFAX may be served through its registered agent, Corporation Services Company, 211 E. 7th St., Suite 620, Austin, TX 78701. EQUIFAX is a public corporation, trading in the New York Stock Exchange as "EFX". EQUIFAX is the parent corporation of EQUIFAX INFORMATION SERVICES, LLC.

10. Defendant EQUIFAX INFORMATION SERVICES, LLC (hereinafter "EIS") is a foreign corporation/limited liability company believed to be authorized to do and is doing business in the State of California. Defendant EIS is a "consumer reporting agency," as codified at 15 U.S.C. §1681a(e).  Defendant EIS principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, GA 30309. EIS may be served through its registered agent, Corporation Services Company, 211 E. 7th St., Suite 620, Austin, TX 78701. EIS is a provider of consumer credit reports and credit monitoring programs; business of "assembling or evaluating consumer credit information." 15 U.S.C. § 1681a(f). Defendant EQUIFAX and its subsidiaries such as EIS and Equifax Consumer Services, LLC operate as alter egos of one another and freely transfer communications from consumers, as well as consumer information and data based on consumer information and communications, between the entities for commercial purposes without restrictions and to treat them as separate entities would promote fraud and sanction injustice. The FCRA, through a rule

mandated at §1681x expressly prohibits a "consumer reporting agency from circumventing or evading treatment as a consumer reporting agency" by means of corporate organization or restructuring. EQUIFAX, Equifax Consumer Services, LLC and EIS operate as one credit reporting agency, and will be referred to herein collectively as "EQUIFAX".

11. Defendants Does 1-10 are currently unknown to plaintiff. Complaint will be amended when facts are discovered regarding unknown parties as permitted by law.

## V.    FACTUAL ALLEGATIONS

12. On or about July 1, 2017, Plaintiff sent Defendants DOE, NC, FDE and ECMC each a Notice of Dispute, demanding validation of an alleged account with Defendant DOE. See **Exhibit "A"**.

13. On or about August 28, 2017, Plaintiff sent Defendants NC and EQUIFAX each a Notice of Dispute, demanding validation of an alleged account with Defendant DOE. See **Exhibit "B"**.

14. On or about August 28, 2017, Plaintiff sent Defendant ECMC a Notice of Dispute demanding validation of an alleged account with Defendant FDE. See **Exhibit "C"**.

15. On or about February 17, 2018, Defendant PIONEER sent Plaintiff a "Tax Delinquent Notice" stating that Plaintiff owed a debt to the IRS. See **Exhibit "D"**.

16. On or about February 28, 2018, Plaintiff sent Defendant PIONEER a Notice of

Dispute demanding validation of an alleged debt with the IRS. See **Exhibit "E"**.

17. On or about March 13, 2018, Defendant PIONEER sent Plaintiff a response
    stating that Plaintiff could validate the alleged debt by access to the Internet.
    See **Exhibit "F"**.

18. Defendants NC, FDE and ECMC made calls to Plaintiff's cellular telephone.

19. Plaintiff did not authorize calls from Defendants NC, FDE and ECMC.

20. The Defendants DOE, DEVOS, NC, FDE and ECMC reported derogatory and
    inaccurate information about Plaintiff to one or more Credit Reporting Agencies as
    shown in her credit reports, reflecting that she does not dispute the alleged debt.
    See **Exhibit "G"**.

21. Plaintiff has disputed the accuracy of the derogatory and inaccurate information
    reported by the Defendants to the Credit Reporting Agencies via certified mail.

22. Defendants have not properly responded to Plaintiff's letters of dispute by
    providing evidence of the alleged debt to Plaintiff nor to the Credit Reporting
    Agencies.

23. Defendants have not provided notice of this disputed matter to the Credit
    Reporting Agencies.

24. Defendants DOE and Devos did not disclosed that it did not loan any of its money
    to Plaintiff.

25. Plaintiff executed, and delivered, Promissory Notes to Defendants DOE and FDE.

26. From at least August 10, 2017 through at least September 12, 2017, Defendants
    NC, FDE and ECMC called Plaintiff's telephone and left approximately 25

recorded messages. Said calls were made using automated capable devices that Plaintiff recognized when hearing the sound of a mechanical pre-recorded voice and automated menu selection.

27. From at least August 10, 2017 through at least September 12, 2017, Defendants NC, FDE and ECMC called Plaintiff's cellular phone at least 25 times with no prior permission given by Plaintiff.

28. Plaintiff possesses written documentation that shows said calls between August 10, 2017 and September 12, 2017. See **Exhibit "H"**.

29. Defendants NC, FDE and ECMC called Plaintiff's phone using automatic telephone dialing system (ATDS) or artificial robotic or prerecorded voices on Plaintiffs phone. Plaintiff noticed that there was no human response when trying to have a conversation during the calls. The call was general in nature and requested the Plaintiff to contact the Defendant.

30. The telephone calls each individually constituted a "communication" as defined by FDCPA 15 U.S.C. §1692a(2).

31. Defendant EQUIFAX admitted to negligently allowing protected sensitive information in its records regarding Plaintiff to be disseminated to the public.

32. Defendants DOE, DEVOS, NC, PIONEER, and ECMC failed to report the results of their investigation findings to the consumer reporting agencies that the information reported by such Defendant was incomplete or inaccurate, as required by 15 U.S.C. §1681s-2(b)(1)(D).

33. Defendants DOE, DEVOS, NC, PIONEER, and ECMC failed to report the results of their investigation to the consumer reporting agencies, as required by 15 U.S.C.

§1681s-2(b)(1)(C).

## VI.    CAUSES OF ACTION

### COUNT 1
### FAILURE TO REPORT
### VIOLATION OF FAIR CREDIT REPORTING ACT 15 U.S.C.§1681(i)(a)(2)
### BY DEFENDANT EQUIFAX

34. Defendant is a "person" as defined by 15 U.S.C. § 1681a.

35. Plaintiff advised Defendant EQUIFAX, through the furnishers and directly, of the false data and demanded that the data be removed from their consumer reports and data files.

36. Defendant EQUIFAX failed to properly investigate/reinvestigate Plaintiff's disputes and Defendant EQUIFAX continued to prepare and publish false consumer reports.

Defendant EQUIFAX and furnishers exchanged information about Plaintiff's disputes through their investigation/reinvestigation and CDV/ACDV/UDF/AUDF processes.

37. Defendant EQUIFAX and the furnishers were very aware of Plaintiff's disputes, as well as their inadequate and illegal investigation/reinvestigation, and the furnishers' responses to the numerous and varied contacts and their collective decision to leave disputes, false data as attributable to Plaintiff.

38. Pursuant to 15 U.S.C. §1681i, a CRA must reasonably reinvestigate an item in a consumer's credit file once the consumer directly notifies the agency of a possible inaccuracy. 15 U.S.C. §1681i(a)(1)(A). This provision also requires a CRA to review

and consider all relevant information submitted by the consumer, promptly provide the credit grantor of the disputed item with all relevant information regarding the dispute, and then promptly delete or modify the item based on the results of the reinvestigation. 15 U.S.C. §1681i(a)(2)(B); 15 U.S.C. §1681i(a)(4); 15 U.S.C. §1681i(a)(5)(A). To state a claim under 15 U.S.C. §1681i(a), Plaintiff must establish that: (1) her credit files contained inaccurate or incomplete information; (2) she notified the CRAs directly of the inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) CRAs failed to respond to the dispute; and (5) CRAs' failure to reinvestigate caused Plaintiff to suffer actual damages. *Thomas v. Trans Union, LLC*, 197 F.Supp.2d 1233, 1236 (D.Or. 2002) (citations omitted).

39. Defendant EQUIFAX failed to use reasonable procedures to investigate/reinvestigate Plaintiff's disputes and, likewise, took inadequate action to correct Plaintiff's consumer reports or delete the false data or otherwise conduct an appropriate, lawful reinvestigation.

40. EQUIFAX utilized an automated dispute system to verify the accuracy of Plaintiff's account.

41. Many Courts have concluded that where a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation. *Saenz v. Trans Union, LLC*, 621 F.Supp.2d 1074, 1083-84 (D.Or. 2007) (discussing cases); see also *Cushman*, 115 F.3d at 225 ("The 'grave responsibility' imposed by §1681i(a) must consist of **something more** than merely parroting information received from other sources."); *Apodaca v. Discover Fin.*

*Servs.*, 417 F.Supp.2d 1220, 1230-31 (D.N.M. 2006) (noting that CRAs may not rely on automated procedures that make only superficial inquires once the consumer has notified it that the information is disputed); *Lambert v. Beneficial Mortg. Corp.*, No. 3:05-cv-05468-RBL, 2007 WL 1309542, at *4-5 (W.D. Wash. May 4, 2007) (finding a question of fact as to whether the ACDV sent by the CRA contained sufficient information to comply with its reinvestigation duties). After this Court reviews the ACDV obtained through discovery, it will not conclude that CRAs' reinvestigations were reasonable as a matter of law.

42. Plaintiff has met the prima facie showing of inaccuracy. Defendant EQUIFAX did not dispute that Plaintiff sent letters to them notifying them of relevant, allegedly inaccurate information.

43. Defendant EQUIFAX failed to take necessary and reasonable steps to prevent further inaccuracies from entering Plaintiff's credit file data and such false data continued to be posted as new consumer credit reports were prepared, issued and disseminated by Defendant EQUIFAX and relayed for further use, reliance and publication by its subscribers.

44. Defendant EQUIFAX failed to adopt and follow reasonable procedures to assure the proper investigation/reinvestigation, accuracy, deletion and/or suppression of false data appearing on Plaintiff's consumer reports (See Exhibit "G") and as contained in its consumer reporting data-bank, as required by the FCRA.

45. Defendant EQUIFAX has wilfully, or alternatively, negligently, violated the FCRA, 15 U.S.C. §1681i(a), on more than one occasion as shown in its reports.

46. As a direct and proximate result of Defendant EQUIFAX' conduct, Plaintiff has and

will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from Defendant EQUIFAX pursuant to 15 U.S.C. §1681o.

**COUNT 2**
**MEANINGFUL INVESTIGATION**
**VIOLATION OF FAIR CREDIT REPORTING ACT 15**
**U.S.C.§1681s-2(b) BY DEFENDANTS DOE, DEVOS, NC,**
**FDE, PIONEER and ECMC**

47. Defendants DOE, DEVOS, NC, FDE PIONEER and ECMC are "persons" as defined by 15 U.S.C. § 1681a.

48. Defendants DOE, DEVOS, NC, FDE PIONEER and ECMC are required to conduct a meaningful investigation of an alleged debt when requested to do so by a consumer.

49. The FCRA imposes certain duties upon furnishers of credit information. After a furnisher of credit information receives notice pursuant to section 1681i(a)(2), the furnisher is required to "conduct an investigation with respect to the disputed information," and "review all relevant information provided" to it by the CRA. 15 U.S.C. § 1681s–2(b)(1). Regardless of the results of its investigation, the furnisher must report back to any CRA that notified it of the dispute. *See Rambarran v. Bank of America, N.A.*, 609 F. Supp. 2d 1253, 1257 (S.D. Fla. 2009) (citing 15 U.S.C. § 1681s–2(b)(1)(C)). "If the investigation results in a finding that [the furnisher] provided incomplete or inaccurate information to the CRA, then it must report the results of its investigation to all other CRAs that received such incomplete or inaccurate information." *Id.* (citing 15 U.S.C. § 1681s–2(b)(1)(D)). Finally, if the investigation is either inconclusive or results in a finding that the furnisher provided incomplete or inaccurate information to the CRA, then the furnisher shall, "for

purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the investigation promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information." 15 U.S.C. § 1681s–2(b)(1)(E). The furnisher must complete its investigations, reviews, and reports within the thirty-day period after the consumer notifies the CRA of the dispute. *See Rambarran*, 609 F. Supp. 2d at 1257 (citing 15 U.S.C. § 1681s–2(b)(2)).

50. If a consumer notifies a furnisher that the consumer disputes the completeness or accuracy of any information reported by the furnisher, the furnisher may not subsequently report that information to the CRAs without providing notice of the dispute (Section 623(a)(3)). The statute is silent on the matter of the furnisher ceasing to report information while it is investigating the dispute. It is thus the opinion of the Commission staff that a furnisher temporarily ceases to report disputed information while it investigates the matter, and then either (1) corrects the information if its investigation results in agreement with the consumer or (2) reports the item as disputed by the consumer where that is the result of the investigation, would comply with Section 623(a).[1]

51. Under section 623(a)(3), after receiving a notice of dispute from a consumer, furnishers are required to meet a disclosure requirement by providing a notice of dispute to the CRAs within a timely manner. However, Defendants DOE, DEVOS, NC, FDE PIONEER and ECMC failed to meet this condition of disclosure by not

---

[1] https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-harvey-12-23-97

placing a "notice of dispute" on Plaintiff's credit file within the (30) day time period.

52. Due to the securitization process[2], Defendants DOE and FDE are not holders

in due course, and therefore have relinquished any account receivables, thereby

reporting inaccurate derogatory information, which is *fraud in the factum*.

53.    Plaintiff sent written requests to Defendants DOE, DEVOS, NC, FDE PIONEER

and ECMC, under the FCRA, disputing the information and demanding that Defendants

DOE, DEVOS, NC, FDE PIONEER and ECMC investigate the inaccuracies and

derogatory information that it reported.

     Even though 15 U.S.C. §1681s-2a (8)(E) contains no private right of action,

furnishers must comply with the statute, which states in relevant part:

> **(E) Duty of person after receiving notice of dispute** After receiving a notice of
> dispute from a consumer pursuant to subparagraph (D), the person that provided
> the information in dispute to a consumer reporting agency shall—
> **(i)** conduct an investigation with respect to the disputed information;
> **(ii)** review all relevant information provided by the consumer with the notice;
> **(iii)** complete such person's investigation of the dispute and report the results of
> the investigation to the consumer before the expiration of the period under section
> 1681i(a)(1) of this title within which a consumer reporting agency would be
> required to complete its action if the consumer had elected to dispute the
> information under that section; and
> **(iv)** if the investigation finds that the information reported was inaccurate,
> promptly notify each consumer reporting agency to which the person furnished
> the inaccurate information of that determination and provide to the agency any
> correction to that information that is necessary to make the information provided
> by the person accurate.

and (D) states:

> **(D) Submitting a notice of dispute** A consumer who seeks to dispute the
> accuracy of information shall provide a dispute notice directly to such person at
> the address specified by the person for such notices that—

---

[2] https://www.fdic.gov/regulations/examinations/credit_card_securitization/ch2.html

(i) identifies the specific information that is being disputed;
(ii) explains the basis for the dispute; and
(iii) includes all supporting documentation required by the furnisher to substantiate the basis of the dispute.

54.   FCRA in 15 U.S.C. 1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

> (2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

55. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Defendants NC, PIONEER and ECMC here were attempting to collect on alleged accounts with DOE and FDE where Plaintiff never had any such accounts as defined by 15 U.S.C. 1681a(r)(4).

56. Defendants DOE, DEVOS, NC, FDE PIONEER and ECMC, by not conducting a meaningful investigation, or an investigation at all, violated Section 623(b) of the FCRA, 15 U.S.C. §1681s-2(b).

57. Defendant DOE, DEVOS, NC, FDE PIONEER and ECMC's responsibility to investigate was triggered by the CRA's reinvestigation request to Defendants DOE, DEVOS, NC, FDE PIONEER and ECMC. Here Defendants DOE, DEVOS, NC, FDE PIONEER and ECMC failed to conduct an investigation and report the results of that investigation to the CRAs.

58. Consumers can maintain a private action against furnishers of information under Section 1681s-2(b). See *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918 (N.D. Ill. 2000); *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d 1296 (D.N.M. 2000); *Campbell v. Baldwin*, 90 F. Supp. 2d 754 (E.D.Tex.2000).

59. As a direct and proximate result of Defendants DOE, DEVOS, NC, FDE PIONEER and ECMC s' conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks damages in the amount of $1,000 from Defendants DOE, DEVOS, NC, FDE PIONEER and ECMC pursuant to 15 U.S.C. §1681o.

## COUNT 3
## FAILURE TO COMMUNICATE
## VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT (FDCPA), 15 U.S.C. §1692e(8)
## BY DEFENDANTS PIONEER, ECMC, and NC

60.   In connection with the collection of a debt, Defendants PIONEER, ECMC and NC, directly or indirectly, used false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. §1692e, by failure to communicate to the CRA to which they reported a debt, that the debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. §1692e(8). This in effect, advertises to the public that the debt is confirmed to be true. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. The following conduct is a violation of this section:

> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the <u>failure to communicate that a disputed debt is disputed</u>. (Emphasis added)

61.   Pursuant to 15 U.S.C. §1692g(b), if the consumer notifies the debt collector

in writing (as did Plaintiff) within thirty (30) days after receipt of an initial communication from debt collector that the debt is disputed, "the debt collector **shall cease** collection of the debt…until the debt collector obtains verification of the debt…and a copy of such verification…is mailed to the consumer." (Emphasis added) As stated by the Sixth Circuit in *Purnell v. Arrow Financial Services LLC*, 303 Fed.Appx. 297, 304 (2008), a debt collector who receives a demand for verification "has a choice: it either may choose not to verify the debt and abandon its collection efforts, or it may decide to verify the debt and resume collection activities once the requested validation has been provided. We find that the language of §1692g(b) dictates that each 'failure' to cease' collection activity without having validated the debt – like each 'communication' of false credit information under 15 U.S.C. §1692e(8) – presents a discrete claim for violation of the FDCPA…" In the instant case, Defendants PIONEER, ECMC and NC violated the FDCPA by not validating the alleged debt. See *Haddad v. AZDF*, 758 F.3d 777 (6th Cir. 2014). Also, Defendants PIONEER, ECMC and NC failed to communicate that a disputed debt was disputed by not reporting it to the CRAs. The accuracy that is disputed consists of: demand that the claim of debt was valid, free from any claims and defects, whether there was a breach of agreement, whether there was a failure of consideration or material alterations, whether the alleged account was transferred, and that the original lender provided value by sourcing the funds from creditor's account.

62. As a direct and proximate result of Defendants PIONEER, ECMC and NCs' conduct, Plaintiff has and will continue to suffer damages as shown herein. Plaintiff

seeks damages in the amount of $1,000 from of the Defendants PIONEER, ECMC

and NC pursuant to 15 U.S.C. §1692k as a strict liability statute.

## COUNT 4
## HARRASSMENT OR ABUSE
## VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT (FDCPA), 15 U.S.C. §1692d(5)
## BY DEFENDANTS NC, FDE and ECMC

63. Defendants NC, FDE and ECMC have engaged in a pattern of conduct

designed to harass and abuse Plaintiff in violation of the FDCPA, 15 U.S.C.

§1692d(5), by "Causing a telephone [Plaintiff's] to ring or engaging any person in

telephone conversation repeatedly or continuously with intent to annoy, abuse, or

harass any person at the called number." Collectively, Defendants NC, FDE and

ECMC called Plaintiff's telephone in excess of 25 times.

64. As a direct and proximate result of Defendants NC, FDE and ECMC's conduct,

Plaintiff has and will continue to suffer damages as shown herein. Plaintiff seeks

damages in the amount of $1,000 from Defendants NC, FDE and ECMC pursuant

to 15 U.S.C. §1692k as a strict liability statute.

## COUNT 5
## FAILURE TO VALIDATE
## VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES
## ACT 15 U.S.C.§1692g(b) BY DEFENDANT PIONEER

65. Defendant PIONEER, by mailing or causing to be mailed collection letters to

plaintiff, had violated 15 USC. §1692g(b) by not properly, timely and legally validating

the alleged debt in question.

**(b)DISPUTED DEBTS**
If the consumer notifies the debt collector in writing within the thirty-day period
described in subsection (a) that the debt, or any portion thereof, is disputed, or

that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) <u>unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed</u> or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor. (Emphasis added)

66. Defendant PIONEER continued collection activity <u>after</u> receiving Plaintiff's February 28, 2018 notice of dispute and failed to provide written validation of debt before resuming collection activities, in violation of 15 U.S.C.§1692g(b), as evidenced by Defendant PIONEER's February 17, 2018 and March 13, 2018 letters.

**COUNT 6**
**FALSE AMOUNT OF DEBT**
**VIOLATIONS OF FAIR DEBT COLLECTION PRACTICES**
**ACT 15 U.S.C.§1692e(2)(A) BY DEFENDANT PIONEER**

67. Defendant PIONEER, by mailing or causing to be mailed collection letters to Plaintiff without validating the amount, have violated 15 U.S.C. §1692e(2)(A) by using false, deceptive or misleading representations of the amount and means in connection with the collection of consumer debt.

**COUNT 7**
**NEGLIGENT VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT (TCPA),**
**SECTION 227, 47 U.S.C. §227(b)(3),**
**BY DEFENDANTS NC, FDE and ECMC**

68. An unintentional call carries a damage amount of $500; an intentional call

carries treble damages in the amount of $1,500 per violation.

69. The Plaintiff has never given Defendants NC, FDE and ECMC permission to call Plaintiff on her cellular telephone, and the calls made were not emergency in nature.

70. Plaintiff and Defendants NC, FDE and ECMC do not have an established business relationship within the meaning of 47 U.S.C. §227.

71. Defendants are "persons" as defined by 47 U.S.C. §153(10).

### COUNT 8
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA), SECTION 227, 47 U.S.C. §227(b)(1)(A), BY DEFENDANTS NC, FDE and ECMC

72. Defendants NC, FDE and ECMC have demonstrated willful or knowing non-compliance with the TCPA by using an automatic telephone dialing system to call Plaintiff's number, which is assigned to a cellular telephone service.

73. Defendants NC, FDE and ECMC have committed more than 25 separate violations of the TCPA and Plaintiff is entitled to treble damages of $1,500 per violation pursuant to 47 U.S.C. §227(b)(3)(B) as they were intentional. Plaintiff's notices to Defendants NC, FDE and ECMC's demanded that they cease calling her.

### COUNT 9
### BREACH OF CONTRACT-FRAUD BY DEFENDANTS DOE, DEVOS and FDE

74. In making a valid claim for collection of a debt, a creditor must be a holder in due course, having invested its own money, in order to have standing. Money must

have been provided by the creditor to fund an account.

75.    The value of Plaintiff's Promissory Notes are what Defendants DOE and FDE

used to fund the loans. Defendants DOE and FDE did not use their own funds. Plaintiff

is the creditor, as she is the only one who put up anything of value.

76. Defendants DOE and FDE have breached the alleged contract by not

disclosing the fact that it will/did not use its own money, committing *ultra vires*. This

act constitutes fraud. Fraud vitiates the most solemn contract.

## COUNT 10
## BREACH OF CONTRACT-NEGLIGENCE
## BY DEFENDANT EQUIFAX[3]

77. On September 7, 2017, Defendant EQUIFAX publicly acknowledged a

cybersecurity incident ("Data Breach") that has potentially impacted approximately

half of all U.S. consumers who have credit histories. Defendant EQUIFAX is liable

to Plaintiff for breach of contract.

## THE TELEPHONE CONSUMER PROTECTION
## ACT OF 1991 ((TCPA), 47 U.S.C. § 227)

1.  The TCPA regulates and restricts the use of automatic telephone equipment.

2.  The TCPA protects consumers from unwanted calls that are made with

    autodialers and/or prerecorded messages.

3.  The TCPA prohibits: (1) any person from calling a cellular telephone number; (2)

    using an automatic telephone dialing system or prerecorded message; (3) without

    the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

---

[3] Count transferred to the Multidistrict Litigation Panel

4. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

5. In enacting the TCPA, Congress intended to give consumers a choice as to how corporate and similar entities may contact them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub. L. No. 102-243, § 11. In support of this, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

6. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." Id. at §§ 12-13.

7. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp.

2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

8. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

9. On July 10, 2015, the FCC ruled that "the TCPA requires consent not of the intended recipient of a call, but of the current subscriber." See FCC 15-72.

## VII.    RELIEF SOUGHT
### A. INJUNCTION FOR VIOLATIONS OF THE
### TCPA, FDCPA and FCRA

78. This Court is authorized to issue a permanent injunction to ensure that: (a) Defendants, all of them, will not continue to violate, the TCPA, FCRA, and the FDCPA and (b) Defendants NC, ECMC and PIONEER will not continue to violate the FDCPA.

### B.    EQUITABLE RELIEF FOR VIOLATIONS
### OF THE FCRA, CIVIL PENALTIES FOR
### VIOLATIONS OF THE FCRA

79. Section 621 of the FCRA, 15 U.S.C. §1681s, authorizes this Court to award monetary civil penalties of not more than $2,500 per violation, per month, for

each violation of Sections 623(a)(3) and 623(b) of the FCRA.

80. Each instance in which Defendants have violated Sections 632(a)(3) an 623(b) of the FCRA constitutes a separate violation of the FCRA for which Plaintiff seeks monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. §1681s.

81. Defendants have engaged in knowing violations of the FCRA as described above, which constitute a pattern or practice of violations.

### C.    CIVIL PENALTIES FOR VIOLATIONS OF THE FDCPA

82. The FDCPA is a strict liability statute.

83. Defendants DOE, NC, ECMC and PIONEER have violated the FDCPA as described above, with knowledge or knowledge fairly implied on the basis of objective circumstances.

84. Each instance within five (5) years preceding the filing of this Complaint, in which Defendants have failed to comply with the FDCPA in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

85. Section 814(a) of the FDCPA, 15 U.S.C. §1692l, and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. §2461, as amended, authorize this Court to award monetary civil penalties of not more than $1,000 for each violation of the FDCPA.

### D.    CIVIL PENALTIES FOR VIOLATIONS OF THE TCPA

86. Defendants NC, ECMC and FDE have violated the TCPA as described above, with

knowledge or knowledge fairly implied on the basis of objective circumstances.

87. Plaintiff is entitled to damages of $1,500 per violation pursuant to 47 U.S.C. §227(b)(3)(B). Total of 25 violations in the amount of $37,500.

## VIII. PRAYER FOR DAMAGES

**WHEREFORE,** plaintiff prays that this Court enter a judgment for plaintiff, against Defendants by:

(a) Enter a permanent injunction to prevent future violations of the TCPA, FDCPA and FCRA by all Defendants;

(b) Adjudging that all Defendants violated either TCPA, FDCPA and/or FCRA;

(c) Award such relief as the Court finds necessary to redress injury to Plaintiff resulting from Defendants' violations of the TCPA, FDCPA and FCRA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten gains;

(d) Award Plaintiff monetary civil penalties for each violation of the TCPA, FDCPA and FCRA as alleged in this Complaint;

(e) Award Plaintiff the costs of bringing this action, as well as other and additional relief as the Court may determine to be just and proper;

(f) Issue Order directing culpable Defendants to remove derogatory and inaccurate information from Plaintiff's credit reports.

## IX. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues so triable. Respectfully submitted

this _____14_____ day of _Ja nvary_, 2019.

_____

Sandra K. Dressler, Plaintiff, In Pro Per

## <u>VERIFICATION</u>

STATE OF FLORIDA

COUNTY OF LEE

I have read the foregoing Complaint and know its contents.

I am the Plaintiff, a party to this action, and am authorized to make this verification. The matters stated in the foregoing document are true and of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct.

_____

Sandra K. Dressler, Plaintiff, In Pro Per

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

SANDRA K. DRESSLER,                    Plaintiff,

**CERTIFICATE OF SERVICE FOR SERVICE BY MAIL**

vs.

Case No. 2:18-cv-311-FtM-99CM

U.S. DEPARTMENT OF EDUCATION, et al.,

Defendant(s).

I hereby certify that on __*May 4, 2018*__ (mm/dd/yyyy), I caused the following documents:

### PLAINTIFF'S THIRD AMENDED COMPLAINT

*[Check the box, below, that applies to how you served the above documents.]*

☐ to be filed electronically with the Clerk of Court through ECF and/or

☑ that I caused a copy of the foregoing documents (and the notice of electronic filing, if filed electronically) to be mailed by first class mail, postage paid, to the following:

U.S. DEPARTMENT OF EDUCATION
U.S. ATTORNEY GENERAL
950 Pennsylvania Ave, NW
Washington, D.C. 20530

Betsy DeVos, Secretary of Education
U.S. DEPARTMENT OF EDUCATION
U.S. ATTORNEY GENERAL
950 Pennsylvania Ave, NW
Washington, D.C. 20530

EDUCATION CREDIT MANAGEMENT CORPORATION
WINDERWEEDLE, HAINES, WARD & WOODMAN, P.A.
329 Park Ave. N., Second Floor
Winter Park, FL 32789

EQUIFAX, INC; EQUIFAX INFORMATION SERVICES, LLC
John Anthony Love
King & Spalding, LLP
1180 Peachtree St NE
Atlanta, GA 30309-3521

FLORIDA DEPARTMENT OF EDUCATION
Marie T. Rives, Assist. Attorney General
501 E. Kennedy Blvd, Suite 1100
Tampa, FL 33602

NAVIENT CORPORATION; NAVIENT SOLUTIONS, LLC.
HINSHAW & CULBERTSON, LLP
2525 Ponce de Leon Blvd, 4th Floor
Coral Gables, FL 33134

PIONEER CREDIT RECOVERY, INC
HINSHAW & CULBERTSON, LLP
2525 Ponce de Leon Blvd, 4th Floor
Coral Gables, FL 33134

Date: 1-14-19

s/

**Signature of filing party**

Sandra K. Dressler

Filer's Typed Name