```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION
```

SANDRA K. DRESSLER,

      Plaintiff,

v.                              Case No: 2:18-cv-311-JES-MRM

FLORIDA DEPARTMENT OF EDUCATION, NAVIENT SOLUTIONS, INC., and EDUCATION CREDIT MANAGEMENT CORPORATION,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendant Florida Department of Education's Motion for Summary Judgment (Doc. #178) filed on January 7, 2022, and plaintiff's Opposition (Doc.#184) filed on January 25, 2022. Also before the Court is defendant Education Credit Management Corporation's Motion for Summary Judgment (Doc. #180) and plaintiff's Opposition (Doc. #185) filed on January 25, 2022. Summary judgment Notices (Docs. #179, #181) were provided to the parties as to each motion, which included special information for a *pro* se party. For the reasons set forth below, the motions are granted.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983) (finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a

2

reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998); Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003).

> When a motion for summary judgment has been made properly, the nonmoving party may not rely solely on the pleadings, but by affidavits, depositions, answers to interrogatories, and admissions must show that there are specific facts demonstrating that there is a genuine issue for trial. Although we must view factual inferences favorably toward the nonmoving party and pro se complaints are entitled to a liberal interpretation by the courts, we hold that a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment.

Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990) (citation omitted).

**II.**

Plaintiff's Third Amended Complaint (Doc. #88) is the operative pleading, and the Florida Department of Education (FDE) and the Education Credit Management Corporation (ECMC) are the two

remaining defendants. As the result of a July 22, 2021, Opinion and Order (Doc. #171), only Count 7 and Count 8 remain against the FDE and only Count 2 remains against the ECMC. Both defendants now move for summary judgment as to their respective counts.

**A. Florida Department of Education**

The Third Amended Complaint alleges that the FDE violated the Telephone Consumer Protection Act (TCPA) by calling plaintiff Sandra Dressler (plaintiff or Dressler) on her cellular phone without her permission (Count 7) and by using an automated telephone dialing system (robocalls) to do so (Count 8). (Doc. #88, pp. 20-21.) The FDE admits the robocalls were made, but asserts it was exempt from the TCPA. The exemption arose, the FDE asserts, because FDE was involved in the collection of debts owed to or guaranteed by the federal government when it placed the robocalls to plaintiff. During the time period in which the calls were made, the FDE argues, such robocalls were statutorily exempt from the application of the TCPA. (Doc. #178, p. 4.)

The Court previously denied FDE's motion for judgment on the pleadings which raised the same contention. The Court stated: "Assuming that Florida DOE is collecting a governmental debt based on its status as a government agency, Barr[1] would prevent plaintiff

---

[1] Barr v. Am. Ass'n of Pol. Consultants, Inc., 140 S. Ct. 2335, 2353-54 (2020).

4

with proceeding with the case. However, without any evidence that Florida DOE was collecting debts owed to or guaranteed by the government, the motion cannot be granted." (Doc. #171, p. 21.) The FDE asserts that its summary judgment motion presents such evidence. Plaintiff responds that material issues of disputed facts remain.

**(1)  Material Facts In Record**

The relevant undisputed evidence in the record establishes the following:

Plaintiff was a student at Southwest Florida College, n/k/a Southern Technical Institute, LLC d/b/a Southern Technical College, from approximately May 2007 until approximately March 2011. Plaintiff applied for, and received, numerous student loans to pay for her education and related expenses at the college. The two loans relevant to this case are:

- Loan #15, a federal Stafford unsubsidized loan for $3,838.00, which was disbursed in three payments to Southern Technical College.

- Loan #16, a federal Stafford subsidized loan for $5,500, which was disbursed in three payments to Southern Technical College.

The lender for both of these Stafford loans was Navient Solutions, formerly known as Sallie Mae. Plaintiff graduated with a degree

5

in 2011, but allegedly became delinquent in paying her student loan debts.

The FDE outlined its status and the relevant loan collection process, without factual contradiction, as follows: The FDE serves as a guarantor for the Federal Family Education Loan Program (FFELP). FDE is a student loan guaranty agency which administers the FFELP through an agreement with the U.S. Department of Education (USED). When a borrower defaults on a FFELP loan guaranteed by the USED's Office of Student Financial Assistance (OSFA), the lender files a claim. After the claim is paid to the lender and reinsurance is received from USED, OSFA begins federally regulated collection activities on the defaulted loan(s). OSFA is required by federal regulations to attempt collection of defaulted student loans and to observe due diligence, as outlined in the federal regulations and Florida statutes. When a student loan borrower does not pay the lender, and fails to cure the delinquency, the FDE, as guarantor, purchases the loan from the lender as a default claim. Once notified by the lender that a student loan borrower is delinquent, the FDE sends correspondence and makes "default aversion" telephone calls seeking a payment plan from the former student.[2]

---

[2] See also Bennett v. Premiere Credit of N. Am., LLC, 504 F. App'x 872, 876 (11th Cir. 2013) for a summary of how the process works.

6

Dressler was alleged to have defaulted by not paying loans #15 or #16. The FDE, as the guarantor of the two Stafford loans, became the holder of both loans. The FDE notified plaintiff of her delinquent status for the loans, but Dressler disputed the claim in a July 1, 2017, letter. In a responsive July 12, 2017, letter, the FDE notified plaintiff that it had guaranteed sixteen (16) FFELP Stafford loans under her name and social security number. Fourteen loans were transferred to the USED, but two loans remained with the lender, Navient Solutions, who reported that plaintiff was delinquent in her payments. (Doc. #178-2, p. 109.) The FDE made default diversion robocalls to Dressler from August 10, 2017, through September 12, 2017, to collect the amount due on the Stafford student loans.

**(2) Government Debt Collector Exemption**

The federal statute which contains the prohibition against robocalls and the exemption at issue provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (A)  to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
>    . . .
>
>    (iii) to any telephone number assigned to a paging service, cellular telephone service,

7

> specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, **unless such call is made solely to collect a debt owed to or guaranteed by the United States;**

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). "Under § 227(b)(1)(A)(iii), the legality of a robocall turns on whether it is 'made solely to collect a debt owed to or guaranteed by the United States.'" Barr v. Am. Ass'n of Political Consultants, Inc., 140 S. Ct. 2335, 2346 (2020). In Barr, the Supreme Court invalidated the government-debt exception on First Amendment grounds and severed that exemption from the remainder of the statute. Id. at 2349. The Supreme Court stated in a footnote:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. See Reply Brief 24. On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."

Id. at 2355, n.12.

### (3) Summary Judgment Resolution

The FDE seeks summary judgment on the basis that, while it made the robocalls at issue, the calls were made solely to collect a debt owed to or guaranteed by the United States. As such, the FDE argues that the TCPA exemption applied to it, and there can be

8

no liability because the calls were made during the time period when such calls were legal.

Plaintiff notes that the Court denied a similar contention when it denied the motion for judgment on the pleadings as to these counts. Plaintiff states that FDE "presents a material fact in controversy as to whether it is exempt from the TCPA statute," "leaving several material facts in dispute" which bars summary judgment. (Doc. #184, p. 3.) Plaintiff does not, however, point to any evidence which supports her position that there are material disputed facts which preclude summary judgment.

The Court finds that the undisputed facts establish that: (1) the two loans at issue were Federal Stafford Loans; (2) both loans were guaranteed by the United States; (3) the FDE was tasked with collecting the loans; (3) the FDE made the robocalls to plaintiff between August 10, 2017 and September 12, 2017; (4) the robocalls were made solely to collect the debt due on the Stafford loans from plaintiff; and (5) pursuant to <u>Barr</u>, there is no liability for such calls made for such purposes in that time period. The FDE has established that it has no liability for the robocalls alleged in Counts 7 and 8. Summary judgment will be granted on Counts 7 and 8 in favor of FDE.

**B. Education Credit Management Corporation**

The only remaining count against ECMC is Count 2 of the Third Amended Complaint. The viable portion of Count 2 alleges that

9

ECMC violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), by failing to conduct a meaningful investigation of Dressler's disputed debts when requested to do so by plaintiff. (Doc. #88, pp. 13-17.) Plaintiff alleges that ECMC was attempting to collect debts on accounts she never had with the Department of Education and the FDE. (Doc. #88, ¶¶ 55, 56.)

The Court previously denied a motion by ECMC for judgment on the pleadings which raised the same contention. (Doc. #171, pp. 4-8.) ECMC asserts it has now submitted evidence which demonstrates that a reasonable investigation was conducted.

**(1) Material Facts in Record**

ECMC filed the Affidavit of Kerry Klisch (Doc. #182-1, pp. 2-8), a litigation specialist in the legal department of ECMC Shared Services Company that provides shared services to the ECMC family group of companies, including legal services to ECMC. (Id., p. 2, ¶ 1.) The Affidavit sets forth the following:

Plaintiff executed four Promissory Notes under which eight (8) student loan disbursements were made to Plaintiff or Southwest Florida College on plaintiff's behalf. (Id., pp. 10-40.) Although the loans were originally guaranteed by FDE, when plaintiff filed a Chapter 13 bankruptcy case FDE transferred all right, title and interest in the loans to ECMC. (Id., p. 41, Exh. B.) After the bankruptcy proceeding concluded, plaintiff's loans went back to lenders for repayment, but ECMC retained the guarantee on the

10

loans. (Id., p. 6, ¶ 9.) The lenders submitted default claims to ECMC because Plaintiff failed to maintain repayment of the loans. ECMC paid the lenders' claims, and interest in the loans were transferred back to ECMC. (Id., ¶ 10.)

On July 1, 2017, plaintiff sent a letter to ECMC disputing the debt and asking for validation of the debt. (Doc. #177-1, p. 229.) Plaintiff stated, among other things, that "I am requesting proof that I am indeed the party you are asking to pay this debt, and there is some contractual obligation that is binding on me to pay this debt." (Id.) Plaintiff requested that ECMC provide her with eighteen (18) categories of documents. (Id., p. 234.)

On July 27, 2017, ECMC sent a letter to plaintiff which "provides the results of our investigation of your dispute." (Id., p. 235.) The letter provided plaintiff with a loan summary that listed disbursement dates and amounts, and the dates the default claims were paid for the loans; the promissory notes which are the basis of the loans; and the complete transaction histories showing all activity on the loans since the date of transfer. (Id., pp. 236-237.) The letter stated: "We have determined that our credit reporting for the above-referenced loans is accurate or we have updated the information with the national consumer reporting agencies (aka credit bureaus) to make it accurate." (Id., p. 235.) The letter continued: "ECMC has requested the national consumer reporting agencies update the status of this tradelines to

'Disputed.'  ECMC is not responsible for and has no control over whether or how long it takes for the national consumer reporting agencies to update your consumer credit report."  (Id.)

ECMC marked plaintiff's account as 'disputed' on its business system on July 27, 2017.  (Doc. #182-1, p. 7, ¶ 14.)  As a result, the loans were reported as disputed to the credit bureaus.  (Id., p. 7, ¶ 14.)  A log indicates that the account dispute was reported, and credit bureau notification letters were sent to plaintiff on August 6, 2017.  (Id., p. 61.)

On August 28, 2017, plaintiff sent a letter to the Chief Financial Officer of ECMC accusing ECMC of fraud which "nullifies anything I may have signed."  (Id., p. 47.)  Plaintiff's letter stated that "no one answered any of the points in my previous letter" and again disputed the debt.  (Id.)  Plaintiff stated that she had concluded that ECMC was "in breach of the alleged agreement," and requested eight categories of information be provided within thirty days.  (Id., pp. 47-48.)

On September 15, 2017, ECMC sent a letter to plaintiff stating it had investigated the evidence she had submitted to support her belief the debt was not past due or not legally enforceable in the amount described.  The letter continued: "A thorough review of your account indicates you are liable for the debt as specified in the notice."  The stated reason was:

> You continue to claim this debt is invalid. Enclosed is a copy of the correspondence ECMC originally sent to you on July 27, 2017. This letter addressed the same issue. Be advised it is ECMC's position your concerns have already received a complete and accurate response from this office.

(Doc. #177-1, p. 242.)

On September 18, 19, and 20, 2017, ECMC received and processed electronic disputes from Experian, Equifax, and Trans Union. ECMC responded to each as disputed and assigned to collections. (Id., p. 7, ¶ 15; pp. 63-65.) The Equifax results were sent to plaintiff on September 21, 2017, showing that "Consumer Disputes This Account Information" while also concluding "This creditor has verified to OUR company that the current status is being reported correctly." (Doc. #177-1, pp. 188, 192, 207.)

On January 23, 2018, plaintiff sent another letter to ECMC again disputing the claim and seeking validation, arguing that "ECMC has not properly responded to my letters of dispute by providing evidence of the alleged debt nor to the Consumer Reporting Agencies." (Doc. #177-1, p. 244.) Plaintiff requested sixteen (16) categories of information from ECMC. (Id., p. 246.)

On February 12, 2018, ECMC responded by letter indicating a balance of $33,008.85 and stating:

> You continue to dispute the loans ECMC holds [i]n your name and continue to request validation of the debt. Be advised, ECMC has already responded to this issue numerous times. For your reference, enclosed are copies

13

> of our previous correspondences. Please note the highlighted dates of these letters as we have answered all the correspondences you submitted. ECMC stands firm that you are legally obligated to repay the outstanding balances listed above and **will no longer address this same issue with you.**
>
> The burden to prove your dispute is your responsibility. You must provide ECMC with documentation clearly indicating you are not legally obligated to repay this debt. Otherwise, ECMC must comply with federal regulations and actively pursue the full recovery of these funds on behalf of the U.S. Department of Education.
>
> All federal student loan information can be found at the **National Student Loan Data System (NSLDS),** which is the central database for all federal loans administered by the U.S. Department of Education (ED). Please be advised according to NSLDS, you received a total of **eighteen** student loans. **Seven** of those loans are currently held by ECMC and are in a default status.

(Id., p. 249) (emphasis in original).

At her deposition, plaintiff conceded that ECMC had investigated, but she argued that ECMC had not "validated" the debt because it failed to provide her with the original promissory note.

> . . . Count two says that we failed to do a meaningful investigation. So if you look at our replies to your dispute letters, we replied that we did, in fact, investigate, and we made conclusions from those investigations, so we did investigate.
>
> So do we just have a difference of opinion where you're saying we didn't investigate and my client says they are, they did investigate?

14

> A. I'm -- you did investigate, but you never validated it with the original promissory note.
>
> Q. All right. But it said right in the note, right here, that a copy is to be acceptable, just as acceptable as the original.
>
> A. I don't remember or recall reading that.
>
> Q. But just because you don't remember or recall reading that doesn't mean the term is not clearly in the agreement.

(Doc. #178-2, pp. 45-46.)

### (2) Fair Credit Report Act

The FCRA does not specify the nature and extent of the "investigation" a furnisher of information must conduct under § 1681s-2(b). The Eleventh Circuit has held that "reasonableness" is an appropriate touchstone for evaluating investigations under § 1681s-2(b), so there is a duty to make reasonable efforts to investigate disputes brought to a furnisher's attention by the consumer. Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1301-02 (11th Cir. 2016).  What constitutes a "reasonable investigation" will vary depending on the circumstances of the case and whether the investigation is being conducted by a CRA under § 1681i(a), or a furnisher of information under § 1681s-2(b). Id. at 1302.  "Whether a furnisher's investigation is reasonable will depend in part on the status of the furnisher—as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line-buyer—and

15

on the quality of documentation available to the furnisher." Id. A furnisher may verify that the information is accurate by "uncovering documentary evidence that is sufficient to prove that the information is true," or by "relying on personal knowledge sufficient to establish the truth of the information." Id. at 1303. When a furnisher ends its investigation by reporting that the disputed information has been verified as accurate, "the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." Id.  There only need be an investigation of the factual error which was reported. Losch v. Nationstar Mortgage LLC, 995 F.3d 937, 945 (11th Cir. 2021).

Plaintiff cannot prevail on her claim against ECMC pursuant to § 1681s-2(b) without identifying some fact in the record establishing that the information ECMC reported regarding her account was inaccurate or incomplete. Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312-13 (11th Cir. 2018).

> Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that had the furnisher conducted a reasonable investigation, the result would have been different; i.e., that the furnisher would have discovered that the information it reported was inaccurate or incomplete, triggering the furnisher's obligation to correct the information. Absent that showing, a plaintiff's claim against a furnisher

16

> necessarily fails, as the plaintiff would be unable to demonstrate any injury from the allegedly deficient investigation. And, in turn, a plaintiff cannot demonstrate that a reasonable investigation would have resulted in the furnisher concluding that the information was inaccurate or incomplete without identifying some facts the furnisher could have uncovered that establish that the reported information was, in fact, inaccurate or incomplete.

Id. at 1313. "Consumers have no private right of action against furnishers for reporting inaccurate information to CRAs regarding consumer accounts. See id. § 1681s-2(c)(1)." Id. at 1312. "Instead, the only private right of action consumers have against furnishers is for a violation of § 1681s-2(b), which requires furnishers to conduct an investigation following notice of a dispute. See id." Id. The "investigations, reviews, and reports" on information provided to consumer reporting agencies must be completed "before the expiration of the period under section 1681i(a)(1) of this title." 15 U.S.C. § 1681s-2(b)(2). The deadline is thus "before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1).

### (3) Summary Judgment Resolution

Plaintiff counters ECMC's summary judgment evidence with arguments about the failure to produce original documents, asserting that "ECMC has not produced the original Promissory Note." (Doc. #185, p. 2, ¶ 8.) Plaintiff also asserts that

17

neither ECMC nor the United States has proved a loss, and if there is a guarantee, the value is the Promissory Note, not anything ECMC or the United States provided. (Id. ¶ 9.)[3] Plaintiff cites no affidavits or other evidence that ECMC failed to investigate the disputes or that the debts were inaccurate. Plaintiff states that after receiving a notice of dispute from a consumer, a furnisher such as ECMC is required to provide notice of the dispute to the CRAs within a timely manner, and that ECMC failed to do so by not placing a "notice of dispute" on Plaintiff's alleged account within the thirty (30) day period. (Doc. #185, pp. 9-13.)

The evidence establishes that plaintiff's notice of dispute and the disputes reported to consumer reporting agencies were reviewed and responded to within 30 days of the receipt of a notice of dispute. (Doc. #182-1, pp. 62-65.) Plaintiff does not dispute that an investigation occurred, and the record establishes that ECMC conducted a reasonable investigation of the dispute identified by plaintiff in her correspondence. Plaintiff admitted at her deposition that she had no evidence of her own to suggest inaccuracies and she did not know of any documents that would show

---

[3] Plaintiff's Opposition to the summary judgment motion refers to the legal standard and argument regarding a motion to dismiss. (Doc. #185, pp. 3-7) as well as the legal standard and cases addressing summary judgment. Given her *pro se* status, the Court gives liberal consideration to her Response.

the loans were incorrect. (Doc. #177-1, 88:3-13.) Summary judgment will be granted in favor of ECMC.

Accordingly, it is now

**ORDERED**:

1. Defendant Florida Department of Education's Motion for Summary Judgment (Doc. #178) is **GRANTED** as to Counts 7 and 8 in favor of FDE.

2. Defendant Education Credit Management Corporation's Motion for Summary Judgment (Doc. #180) is **GRANTED** as to Count 2 in favor of ECMC.

3. The Clerk shall enter judgment pursuant to the July 22, 2021, Opinion and Order (Doc. #171)[4] and as set forth in this Opinion and Order, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___15th___ day of February 2022.

                                              _____
                                              JOHN E. STEELE
                                              SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record

---

[4] Judgment shall also be entered in favor of FDE on Counts 2, 4, and 9 and in favor of ECMC on Counts 3, 4, 7, and 8.

19